# Exhibit B

 **CT Corporation**

**Service of Process Transmittal**
01/29/2019
CT Log Number 534821621

**TO:**  Ali N. Miller, Senior Project Specialist
Engle Martin & Associates, LLC
5565 Glenridge Connector Ste 900
Atlanta, GA 30342-4797

**RE:**  **Process Served in Texas**

**FOR:**  Engle Martin & Associates, LLC  (Domestic State: GA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | EMRAN, LLC AND WAEL SULEIMAN, PLTFS. vs. CATLIN SPECIALTY INSURANCE COMPANY, ET AL., DFTS. // To: ENGLE MARTIN & ASSOCIATES, LLC |
| **DOCUMENT(S) SERVED:** | Citation, Petition, Certificate, Notice, Interrogatories, Request(s) |
| **COURT/AGENCY:** | 81st Judicial District Court Karnes County, TX<br>Case # 190100015CVK |
| **NATURE OF ACTION:** | Property Damage Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 01/29/2019 postmarked on 01/23/2019 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 am on the Monday next following the expiration of 20 day after the date you were served this citation and petition |
| **ATTORNEY(S) / SENDER(S):** | Matthew J. Worrall<br>Worrall Law Group, PLLC<br>1201 Shepherd Dr.<br>Houston, TX 77007<br>832-423-4115 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/29/2019, Expected Purge Date: 02/03/2019<br><br>Image SOP<br><br>Email Notification,  Ali N. Miller  AMiller@englemartin.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201 |
| **TELEPHONE:** | 214-932-3601 |

Page 1 of  1 / RA

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

CERTIFIED MAIL

7015 1520 0002 2373 5809

DENISE RODRIGUEZ
KARNES COUNTY DISTRICT CLERK
101 N. PANNA MARIA STE. 104
KARNES CITY, TX 78118

NEOPOST
01/23/2019
US POSTAGE $009.30⁰

FIRST-CLASS MAIL

ZIP 78118
041L10421195

CT Corporation System
1999 Bryan St Ste 900
Dallas, TX 75201-3136

COPY

## CITATION BY CERTIFIED MAIL - TRC 106

### THE STATE OF TEXAS:

**Cause No. 19-01-00015-CVK**

EMRAN, LLC ET AL. VS. CATLIN SPECIALTY
INSURANCE COMPANY ET AL.

| IN THE DISTRICT COURT
| 81ST/218TH JUDICIAL DISTRICT OF
| KARNES COUNTY, TEXAS

TO: **CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS TX 75201-3136** - GREETING

**NOTICE TO Party Plaintiff: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 am on the Monday next following the expiration of 20 day after the date you were served this citation and petition, a default judgment may be taken against you."** *TRCP. 99*

You are hereby commanded to appear by filing a written answer to the **PLAINTIFF'S ORIGINAL PETITION** at or before 10:00 o'clock A.M. on the Monday next after the expiration of 20 days after the date of service of this citation before the Honorable 81ST/218TH District Court of Karnes County, at the Courthouse in said County in Karnes City, Texas. Said **PLAINTIFF'S ORIGINAL PETITION** was filed in said court on the **22nd day of January, 2019** in the above entitled cause.

The nature of the party's demand is fully shown by a true and correct copy of **PLAINTIFF'S ORIGINAL PETITION** accompanying this citation and made a part hereof.

Issued and given under my hand and seal of said Court at Karnes City, Texas **on this the 23rd day of January, 2019**.

Attorney for Plaintiff or Plaintiff:
**MATTHEW J WORRALL**
1201 SHEPHERD DR
HOUSTON TX 77007
PHONE: 832-423-4115

Clerk of the Court:
DENISE RODRIGUEZ
KARNES COUNTY DISTRICT CLERK
101 N. PANNA MARIA AVE., STE. 104
KARNES CITY, TEXAS 78118

By _____ Deputy

### CERTIFICATE OF DELIVERY BY CERTIFIED MAIL

Came to hand on the **23rd day of January, 2019** at _____ o'clock ___M and executed the **23rd day of January, 2019** by mailing the same to **ENGLE MARTIN & ASSOCIATES, LLC** at **CT CORPORATION SYSTEM 1999 BRYAN ST STE 900 DALLAS TX 75201-3136** by registered or certified mail, return receipt requested, a true copy of this citation with a copy of the petition were attached thereto.

Certified Mail #: 70151520000223735809
Fees ........... $100.00

DENISE RODRIGUEZ, District Clerk
Karnes County, Texas
By _____ Deputy

[Attach return receipts with addressee's signature to reverse side]

19-01-00015-CVK

Filed: 1/22/2019 3:58 PM
Denise Rodriguez
District Clerk
Karnes County, Texas

Melissa Alvarez

Cause No. 19-01-00015-CVK

| | | |
|---|---|---|
| EMRAN, LLC AND WAEL SULEIMAN | § | IN THE DISTRICT COURT |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | KARNES COUNTY, TEXAS |
| | § | |
| CATLIN SPECIALTY INSURANCE | § | |
| COMPANY, ENGLE MARTIN & | § | _____81ST_____ JUDICIAL DISTRICT |
| ASSOCIATES, LLC, AND MCCLELLAND | § | |
| AND HINE, INC. | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, EMRAN, LLC, (hereinafter referred to as "Emran, LLC") and WAEL SULEIMAN (collectively "Plaintiff") and files this Original Petition against Defendants, CATLIN SPECIALTY INSURANCE COMPANY ("Catlin Specialty"), ENGLE MARTIN & ASSOCIATES, LLC ("Engle Martin"), and MCCLELLAND AND HINE, INC. ("McClelland") (collectively "Defendants") and respectfully would show this court as follows:

### PARTIES

1.1 Plaintiff, Emran LLC, is a company licensed to do business in Texas with property in Karnes, Texas.

1.2 Plaintiff, Wael Suleiman, is a natural person residing in Texas with property in Karnes, Texas.

1.3 Defendant, Catlin Specialty, is a foreign insurance company that engaged in the business of insurance in the State of Texas at all times material to this action, operating for the purpose of accumulating monetary profit. Catlin Specialty regularly conducts the business of insurance in a

systematic and continuous manner in the State of Texas.    Catlin Specialty may be served with process by serving certified mail, return receipt requested, to **Texas Commissioner of Insurance, 333 Guadalupe, Austin, Texas 78701** who can forward process to **Sarah Mims, Assistant Secretary, 505 Eagleview Boulevard, Suite 100, Exton, Pennsylvania 19341-0636**.

1.4    Upon information and belief, Defendant, Engle Martin, is a foreign corporation operating out of its Texas offices for the purpose of accumulating monetary profit.  Engle Martin regularly engages in the business of adjusting insurance claims in Texas and may be served with process through its registered agent via certified mail, return receipt requested, to **CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX, 75201-3136**.

1.5    Upon information and belief, Defendant, McClelland is a Texas corporation operating for the purpose of accumulating monetary profit with a principal place of business in San Antonio, Texas.  McClelland may be served with process by serving its registered agent by certified mail, return receipt requested, to **Gilbert C. Hine Jr., 2202 Thousand Oaks, Suite 100, San Antonio, TX 78270**.

## DISCOVERY LEVEL

2.1    Plaintiff intends for discovery to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

## JURISDICTION

3.1    The Court has jurisdiction over this controversy because the damages are within the jurisdictional limits of this court.  Plaintiff is seeking monetary relief over $200,000 but not more than $1,000,000.  Plaintiff reserves the right to amend this petition during and/or after the discovery process.

3.2     The Court has jurisdiction over Defendants, because Defendants engaged in the business

of insurance in the State of Texas, McClelland is located in Texas, and Plaintiff's causes of action

arise out of Defendants' business activities in the State of Texas.

### VENUE

4.1     Venue is proper in Karnes County under TEX. CIV. PRAC. & REM. CODE 15.002(a)(1) as all

or a substantial part of the events or omissions giving rise to this claim occurred in Karnes County.

In particular, the Property at issue and the adjustment of the claim by Defendants for losses under

the policy (including payments to be made to Plaintiff under the Policy) were conducted in Karnes

County, Texas. *Id.*   Investigations and policy representations including communications to and

from Defendants and Plaintiff including telephone calls, mailings, and other communications to

Plaintiff occurred in Karnes County, Texas. *Id.*

### CONDITIONS PRECEDENT

5.1     All conditions precedent to recovery has been performed, waived or have occurred.

### FACTS

6.1     Plaintiff is the owner of insurance policies numbered 4200903364 and 4200903790 issued

by Catlin Specialty and McClelland ("the Policy").

6.2     Plaintiff owns a large commercial building located at 115 N. Esplanade, Karnes City, Texas

78118, in Karnes County (hereinafter referred to as "the Property").   Catlin Specialty and

McClelland sold the Policy, insuring the Property, to Plaintiff.

6.3     Policy 4200903364 insures the Property for wind and hail damage to the Property during

the policy period August 10, 2016 through August 10, 2017 and Policy 4200903790 insures the

Property for wind and hail damage to the Property during the policy period August 10, 2017

through August 10, 2018.

6.4     A hail storm damaged the Property during the Policy 4200903364's policy period and Hurricane Harvey's winds and rain damaged the Property on or around August 31, 2017 (collectively "the Storms"). Hurricane Harvey's wind and rain damaged the Property's roof and interior ceilings and sheetrock. The hail storm damaged the Property including extensive damage to Plaintiff's metal roof, awning, siding, gutters and interior drywall.

6.5     On or about August 25, 2017, Hurricane Harvey, recognized as one of the most devastating natural disasters in United States history, made landfall in Texas as a Category 4 hurricane with wind speeds of up to 150 miles per hour. Hurricane Harvey's winds and rain traveled along southeast Texas wreaking billions of damages to private and public property including Karnes County, Texas. The Texas Governor Greg Abbott estimated that Hurricane Harvey's damages will total a historic $180 billion.

6.6     Plaintiff subsequently submitted two claims to Catlin Specialty and McClelland for the damage the Property sustained as a result of the Storms. Defendants assigned claim number 100-00-005992 to the Hurricane Harvey wind claim (the "Harvey Claim") and claim number 100-00-007417 to the hail damage claim (the "Hail Claim") (collectively "the Claims"). Plaintiff requested that Catlin Specialty cover the cost of repairs, including but not limited to replacement of the roof for both Claims. The Storms wind and hail caused extensive damage to the roof systems, also resulting in multiple storm-created openings that allowed water to enter the interior of the business, causing interior damage to ceiling tiles and walls.

6.7     Catlin Specialty and McClelland assigned Engle Martin to inspect the property for both claims. Engle Martin assigned its adjuster Patrick McEnaney ("the adjuster") to handle the Harvey Claim. The adjuster's inspection allegedly occurred on September 21, 2017. For over a year after

the inspection, Defendants never notified Plaintiff of its coverage determination for the Harvey Claim. In fact, Defendants failed to promptly adjust Plaintiff's Harvey Claim as Plaintiff did not receive a written coverage denial by Catlin Specialty or McClelland until November 8, 2018 when Plaintiff's insurance agent asked Catlin Specialty and McClelland for an update. The denial letter was sent via email on November 8, 2018 and wrongfully denied the Harvey Claim in full.

6.8     Apparently, Catlin Specialty's and McClelland's adjuster responsible for handling the Harvey Claim, Steve Henning, no longer works for the company and Catlin Specialty and McClelland intentionally and knowingly failed to notify Plaintiff of Steve Henning's coverage determination before his departure. According to email correspondence Catlin Specialty and McClelland sent to Plaintiff's insurance agent on November 8, 2018, Steve Henning arbitrarily closed the file and wrongfully denied the Harvey Claim due to "vacancy issues" and "maintenance-related issues." However, this was never disclosed to Plaintiff until Plaintiff's insurance agent forwarded him the November 8, 2018 email after Plaintiff asked for an update. Plaintiff is yet to receive any correspondence or documentation of findings from Steve Henning.

6.9     Engle Martin's denial letter received on November 8, 2018 denied the Harvey Claim by cutting and pasting inapplicable exclusions in a form denial letter created in 2014. Catlin Specialty and McClelland mispresented the exclusions provided under its Policy with Plaintiff. In its denial letter, Catlin Specialty and McClelland cited exclusions that are completely inapplicable to Plaintiff's Policy in violation of Texas law. Furthermore, the denial letter does not mention "vacancy issues" even though it is clear Defendants wrongfully denied the Harvey Claim for "vacancy issues."

6.10    Plaintiff is yet to receive any clear documentation of Engle Martin and Patrick McEnaneys inspection. Plaintiff is yet to receive any photographs, estimates or reports of Engle Martin and

Patrick McEnaney's inspection of the Property. .

6.11 .  Next, Engle Martin assigned its adjuster Jason Hodge ("the second adjuster") to handle the Hail Claim. That inspection allegedly occurred on April 17, 2018.  For over nine months after the inspection, Defendants failed to notify Plaintiff of their coverage determination for the Hail Claim. In fact, Defendants failed to promptly adjust Plaintiff's Hail Claim as Plaintiff did not receive a written coverage denial by Defendants until January 15, 2019 in response to Plaintiff's pre-suit demand letter.  The denial letter received on January 15, 2019 wrongfully denied the Hail Claim in full and no payment was issued.

6.12   Once again, Engle Martin's denial letter received on January 15, 2018 denied the Hail Claim by cutting and pasting inapplicable exclusions in the same form denial letter.  Catlin Specialty and McClelland mispresented the exclusions provided under its Policy with Plaintiff and the exclusions were not discussed in any other documentation.  In its denial letter, Catlin Specialty and McClelland cited exclusions that are completely inapplicable to Plaintiff's Policy in violation of Texas law.  Furthermore, the denial letter does not mention "vacancy issues" even though it is clear Defendants wrongfully denied the Hail Claim for "vacancy issues."

6.13   Catlin Specialty and McClelland's denial of the claims were based entirely on an improper and unreasonable inspection by Engle Martin & Associates, an adjusting firm that is consistently hired by insurance companies to perform and outcome-oriented investigation with the sole purpose of producing favorable reports in an effort to deny claims and receive repeat business from Catlin Specialty and McClelland.  The adjusters were improperly trained and failed to perform a thorough investigation of the Claims spending an inadequate amount of time inspecting the Property and determining the amount and cause of the damages.  The adjusters conducted a substandard inspection of Plaintiff's Property.  Catlin Specialty and McClelland failed to promptly adjust

Plaintiff's claims as Plaintiff did not receive a denial of coverage by Catlin Specialty and McClelland within a reasonable time.

6.14    Catlin Specialty and McClelland and their personnel failed to thoroughly review and properly supervise the work of Engle Martin and its assigned adjusters which ultimately led to the approving an improper adjustment and an inadequately unfair denial of Plaintiff's claims.  As a result of Defendants' wrongful acts and omissions set forth above and further described herein, Plaintiff was wrongfully denied on the claims and has suffered damages.  After the adjusters' unreasonable investigation, the adjusters failed to timely send correspondence to the insured with Defendants' claim decision.  Further, Defendants failed to address the ordinance law coverages that Plaintiff will be required to follow when it replaces the damaged roof.

6.15    Defendants set about to deny and/or underpay on properly covered damages.  Defendants failed to provide full coverage for the damages sustained by Plaintiff and under-scoped Plaintiff's damages, thereby denying adequate and sufficient payment on Plaintiffs claims.  As a result of Defendants' unreasonable investigation, Plaintiff's claims were improperly adjusted, and Plaintiff was wrongfully denied on the claims and has suffered damages.

6.16    The mishandling of Plaintiff's claims has also caused a delay in Plaintiff's ability to fully repair the Property, which has resulted in additional damages.  Plaintiff has lost a tenant and has not been able lease the Property due to the covered damage.  To this date, Plaintiff has yet to receive the full payment that it is entitled to under the Policy.

6.17    As detailed in the paragraphs below, Catlin Specialty and McClelland wrongfully denied Plaintiff's claims for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff.  To date, Catlin Specialty continues to delay in the payment for

the damages to the Property. As such, Plaintiff has not been paid in full for the damages to the Property.

6.18 .Catlin Specialty and McClelland failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, it refused to pay the full proceeds for damages covered by the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Catlin Specialty's conduct constitutes a breach of the insurance contract between Catlin Specialty and Plaintiff.

6.19 Catlin Specialty and McClelland misrepresented to Plaintiff that the damage to the Property were not covered under the Policy, even though the damage was caused by a covered occurrence. Furthermore, the Defendants misrepresented the reasons for their denial of coverage. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(1). Defendants denied coverage by cutting and pasting blanket exclusions from an inapplicable policy over one year after the inspection. Defendants' denial letter to Plaintiff misrepresents the exclusions provided under the Policies, violating the Texas Insurance Code.

6.20 Defendants failed to make an attempt to settle Plaintiff's claims in a fair manner, although it was aware of its liability to Plaintiff under the Policy. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.0060(a)(2)(A).

6.21 Defendants failed to explain to Plaintiff the reasons for its offer of an inadequate settlement. Specifically, Defendants failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under

the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff's claims. Defendants' conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(3).

6.22 Defendants failed to affirm or deny coverage of Plaintiff's claims within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claims, in writing from Defendants. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(4).

6.23 Defendants refused to fully compensate Plaintiff, under the terms of the Policy, even though Defendants failed to conduct a reasonable investigation. Specifically, Defendants performed an outcome-oriented investigation of Plaintiff's claims, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's claims on the Property. Defendants' adjuster no longer worked for Defendants when Defendants denied the claims and as a result Defendants denied the claims without a proper investigation. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(7).

6.24 Defendants failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiff's claims, beginning an investigation of Plaintiff's claims, and requesting all information reasonably necessary to investigate Plaintiff's claims, within the statutorily mandated time of receiving notice of Plaintiff's claims. Defendants did not provide notice of its denial of the Harvey Claim to Plaintiff until November 8, 2018 and the Hail Claim until January 15, 2019. Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.055.

6.25    Defendants failed to accept or deny Plaintiff's full and entire claims within the statutorily mandated time of receiving all necessary information. Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE § 542.056.

6.26    Defendants failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay.  Specifically, it has delayed full payment of Plaintiff's claims longer than allowed and, to date, Plaintiff has not received full payment for the claims. Defendants' conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims.  TEX. INS. CODE § 542.058.

6.27    From and after the time Plaintiff's claims were presented to Defendants, the liability of Catlin to pay the full claims in accordance with the terms of the Policy was reasonably clear. However, Defendants refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment.  Defendants' conduct constitutes a breach of the common law duty of good faith and fair dealing.

6.28    Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff.  As a result of Defendants' wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who are representing Plaintiff with respect to these causes of action.

6.29    Defendants' representation that there was no covered damage and no evidence of covered damage to the roof and interior were false and misleading because Plaintiff's Hurricane Harvey and Hail Claim damages both well exceed the deductible covered under the policy.  Defendants knowingly and intentionally utilized an outcome-oriented, limited inspection to misrepresent that

there are no covered damages to the roof or interior caused by the Storms. These misrepresentations allowed Catlin to exclude covered damages to the Property.

6.30    Plaintiff's experience is not an isolated case. The acts and omissions Defendants committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendants with regard to handling these types of claims. Defendants' entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

6.31    On June 1, 2017, Governor Abbott signed House Bill 1774 into law as Section 542A of the Texas Insurance Code. Section 542A.003 requires detailed, comprehensive pre-suit notice that is intended to make the claims litigation process more transparent and potentially avoid unnecessary lawsuits. Upon receiving notice, an insurer has a right to conduct an inspection and even make an offer to avoid litigation. When an insurance company utilizes Section 542A properly, an insurance carrier and insured can avoid protracted litigation over a clear claim.

6.32    In compliance with Section 542A.003, Plaintiff gave its pre-suit notice on November 13, 2018. The pre-suit notice provided a comprehensive outline of Plaintiff's claims, damages, and quantified the loss at that point in time. Instead of hiring an unbiased adjusting company to perform an inspection, Defendants simply had Engle Martin send another form denial letter.

### FIRST CAUSE OF ACTION – BREACH OF CONTRACT

7.1    Each of the foregoing paragraphs is incorporated by reference in the following:

7.2.    As outlined above, Catlin Specialty had a contract of insurance with Plaintiff. Catlin Specialty breached the contract by its failure/and or refusal to pay for covered damages under the Policy. As a result of the Catlin Specialty's breach, Plaintiff suffered legal damages.

## SECOND CAUSE OF ACTION – VIOLATIONS OF TEXAS INSURANCE CODE

8.1     Each of the foregoing paragraphs is incorporated by reference in the following:

8.2     Defendants misrepresented to Plaintiff a material fact or policy provision relating to coverage at issue in violation of TEX. INS. CODE § 541.060 (a)(1).

8.3     Defendants unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claims, even though liability under the Policy had become reasonably clear, constitutes a violation of TEX. INS. CODE § 541.060(a)(2)(A).

8.4     Defendants failed to provide promptly a reasonable explanation, in relation to the facts or applicable law, for the denial of a claim, in violation of TEX. INS. CODE § 541.060(a)(3).

8.5     Defendants failed to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies.

8.6     Defendants failed within a reasonable time to affirm or deny coverage of a claim to a policyholder; or submit a proper reservation of rights to a policyholder in violations of TEX. INS. CODE § 541.060(a)(4).

8.7     Defendants refused to pay the Claims without conducting a reasonable investigation with respect to the Claims in violation of TEX. INS. CODE § 541.060(a)(7).

8.8     Defendants misrepresented the insurance policy under which it affords property coverage to Plaintiff, by making an untrue statement of material fact, in violation of TEX. INS. CODE § 541.061 (1).

8.9     Defendants misrepresented the insurance policy under which it affords Property coverage to Plaintiff by failing to state a material fact that is necessary to make other statements made not misleading, in violation of TEX. INS. CODE § 541.061 (2).

8.10    Defendants misrepresented the insurance policy under which it affords property coverage to Plaintiff by making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of material fact and failing to disclose a matter required by law to be disclosed, in violation of TEX. INS. CODE § 541.061 (3) and TEX. INS. CODE § 541.0002 (1).

8.11    Defendants failed to acknowledge within reasonable promptness pertinent communications relating to Plaintiff's claims arising under Plaintiff's insurance policy.

8.12    Defendants knowingly committed the foregoing acts, with actual knowledge of the falsity, unfairness, or deception of the foregoing acts and practices, in violation of TEX. INS. CODE § 541.002 (1).

### THIRD CAUSE OF ACTION – PROMPT PAYMENT OF CLAIM

9.1    Each of the foregoing paragraphs is incorporated by reference in the following:

9.2    Plaintiff is entitled to interest and attorney fees for violating the Texas Insurance Code, Prompt Payment of claims TEX. INS. CODE §542.051 et. seq.

9.3    Catlin Specialty failed to acknowledge receipt of the Claims in violation of TEX. INS. CODE §542.055(a)(1).

9.4    Catlin Specialty failed to timely commence investigation of the Claims or to request from Plaintiff any additional items, statements or forms that the Defendants reasonably believe to be required from Plaintiff in violation of TEX. INS. CODE §542.055(a)(2)-(3).

9.5    Catlin Specialty failed to notify Plaintiff in writing of its acceptance or rejection of the Claims not later than the 15th business day after receipt of all items, statements and forms required by Catlin Specialty in violation of TEX. INS. CODE §542.056(a).

9.6    Catlin Specialty delayed the payment of Plaintiff's Claims following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided

for under TEX. INS. CODE §542.058(a).

9.7    Each of the actions described herein were done knowingly as described in the Texas Insurance Code and were the producing cause of Plaintiff's damages.

9.8    Plaintiff makes a claim for statutory interest penalties along with reasonable attorney's fees for violation of Texas Insurance Code Subchapter B pursuant to TEX. INS. CODE §542.060.

## FOURTH CAUSE OF ACTION – BREACH OF DUTY OF GOOD FAITH & FAIR DEALING

10.1    Each of the foregoing paragraphs is incorporated by reference in the following:

10.2    Catlin Specialty, as the property coverage insurers, had a non-delegable duty to deal fairly and in good faith with Plaintiff in the processing of the Claims. Catlin Specialty breached this duty by refusing to properly investigate and effectively denying insurance benefits. Catlin Specialty knew or should have known that there was no reasonable basis for denying or delaying the required benefits. As a result of the Catlin Specialty' breach of these legal duties, Plaintiff suffered legal damages.

## FIFTH CAUSE OF ACTION – BAD FAITH PUNITIVE DAMAGES

11.1    Each of the foregoing paragraphs is incorporated by reference in the following:

11.2    Defendants acted fraudulently and with malice in denying and delaying Plaintiff's Claims for benefits. Defendants had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of Plaintiff.

## SIXTH CAUSE OF ACTION – DTPA VIOLATIONS

12.1    Each of the foregoing paragraphs is incorporated by reference in the following:

12.2    The Deceptive Trade Practices-Consumer Protection Act (DTPA) provides additional protections to consumers who are victims of deceptive, improper, or illegal practices. Defendants' violations of The Texas Insurance Code, as set forth herein, specifically violates the DTPA as well.

Defendants has also acted unconscionably, as that term is defined under the DTPA

12.3    Each of the actions described herein were done "knowingly" as that term is used in the DTPA and were a producing cause of Plaintiff's damages.

## KNOWLEDGE

13.1    Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and were a producing cause of Plaintiff's damages.

## DAMAGES

14.1    Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

14.2    Plaintiff is entitled to the actual damages resulting from the Defendants' violations of the law. These damages include consequential damages to its economic welfare from the wrongful denial and delay of benefits including the loss of the Property and business; and the other actual damages permitted by law. In addition, Plaintiff is entitled to exemplary damages.

14.3    For breach of contract, Plaintiff is entitled to regain the benefit of their bargain, which is the amount of Plaintiff's claims less the applicable deductible, together with attorney's fees.

14.4    For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff ask for three times their actual damages. TEX. INS. CODE § 541.152.

14.5    Plaintiff is entitled to statutory interest as damages under the Texas Insurance Code 542.060(c).

14.6    Plaintiff is entitled under law to the recovery of prejudgment interest at the maximum legal rate.

14.7    Plaintiff is entitled to the recovery of attorneys' fees pursuant to TEX. CIV. PRAC. & REM. CODE §38.001, TEX. INS. CODE §542.060(a)-(b), the TEX. BUS. & COMMERCE CODE §17.50 and TEX. CIV. PRAC. & REM. CODE §37.009.

14.8    As a result of the Defendants' acts and/or omissions, Plaintiff has sustained damages in excess of the minimum jurisdictional limits of this Court.

## DISCOVERY REQUESTS

15.1    Pursuant to Texas Rules of Civil Procedure 194, Plaintiff requests that each Defendants disclose, within (50) days of service of this request, the information or materials described in Texas Rule of Civil Procedure 194.2(a)-(l).

15.2    Defendants are requested to respond to the interrogatories and requests for production, attached as Exhibit "A" within fifty (50) days, in accordance with the instructions stated therein.

## JURY DEMAND

16.1    Plaintiff hereby demands a trial by jury. The necessary jury fee has been paid.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that this court site Defendants to appear and answer herein and that Plaintiff have judgment taken against Defendants and recovers from Defendants all damages allowed by law, and that Plaintiff be awarded attorneys' fees for trial and any appeal of this case, for pre-judgment and post judgment interest as allowed by law, costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

**WORRALL LAW GROUP, PLLC**

By:    */s/ Matthew J. Worrall*
       **Matthew J. Worrall**
       SBN: 24070883
       1201 Shepherd Dr.
       Houston, Tx 77007
       Telephone (832) 423-4115
       Fax: (713) 583-3411
       Email: mworrall@worralllaw.com

**ATTORNEY FOR PLAINTIFF**

## PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION

COMES NOW Plaintiff, in the above-styled and numbered cause, and requests that Defendant(s)
(1) answer the following discovery requests separately and fully in writing under oath within 30
days of service (or within 50 days of service if the discovery was served prior to the date an
answer is due); (2) produce responsive documents to the undersigned counsel within the same
time period; and (3) serve its answers to these discovery requests within the same time period to
Plaintiff by and through his attorneys of record, Worrall Law Group, PLLC, 1201 Shepherd St.,
Houston, Texas 77007.

Respectfully submitted,

WORRALL LAW GROUP, PLLC

By:      /s/ Matthew J. Worrall
         **Matthew J. Worrall**
         SBN: 24070883
         1201 Shepherd Dr.
         Houston, Texas 77007
         Telephone (832) 423-4115
         Facsimile: (713) 583-3411
         Email: mworrall@worralllaw.com

**ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that I sent a true and correct copy of the attached discovery requests to Defendant(s) as an attachment to the petition. Therefore, Defendant(s) would have received it when it was served with the citation.

**WORRALL LAW GROUP, PLLC**

*/s/ Matthew J. Worrall*
**Matthew J. Worrall**

## INSTRUCTIONS

In responding to each request set forth below, please comply with the following instructions:

1. Multiple Defendants. If the interrogatories and requests for production are addressed to multiple defendants, we request that each individual Defendant respond to the requests separately and individually.

2. Separate Requests. Respond to each request separately.

3. Numbered Production. If available through reasonable steps, we request you provide a unique alpha-numeric identifier on each responsive item. If items produced in response to a request contain identifiers, for each written response provide both the information that identifies the item(s) and the identifier(s).

4. Privilege. For all responsive items withheld based on a contention that the item is protected from production because of privilege:

   4.1. Identify the item that has been withheld.

   4.2. Identify the request(s) to which the item is responsive.

   4.3. Identify the specific grounds for the claim of privilege.

5. Responsive Items Not Discoverable. For all responsive items withheld based on a contention that the item is not discoverable (for a reason other than privilege):

   5.1. Provide a description of the subject matter of the item.

   5.2. Identify the date of the item.

   5.3. Identify the name, job title, and address of the person who prepared the item.

   5.4. Identify the name, address, and job title of the person to whom it was addressed, circulated, or who saw it.

   5.5. Identify the present location and the custodian for the document.

6. Responsive Items Not Produced. If there are items responsive to a request, but copies of the responsive items are not produced at the time written responses are served, respond to each request by listing the items and by identifying them as follows:

   6.1. The nature of the item (e.g., letter, handwritten note).

   6.2. The title or heading that appears on the item (if any).

   6.3. The date of the item and the date of each addendum, supplement, or other addition or

change.

6.4.    The identity of the author and the signer of the item (if applicable), and of the person on whose behalf or at whose request or direction the item was prepared or delivered.

7.   Responsive Item No Longer Exists.  For responsive items that no longer exist or that cannot be located, identify the item, state how and when it passed out of existence, or when it could no longer be located, and the reasons for the disappearance or loss.  Further, identify each person having knowledge about the disposition or loss of the item, and identify any other item evidencing the lost item's existence or any facts about the lost item.

8.   Request for Electronic Data.  Pursuant to Rule 196.4 of the Texas Rules of Civil Procedure, all requests specifically request production of electronic data. If a response to a request includes electronic data in the responding party's possession, custody, or control, provide the following:

8.1.    An affirmative statement of the existence of electronic data responsive to the request.

8.2.    If the electronic data contains a digital photograph or picture, produce the electronic data in its native file format on a commonly used optical format such as a compact disc or digital versatile disc.

8.3.    If the electronic data, through reasonable efforts, can be produced in the form of a commonly used image storing file (such as Acrobat Portable Document Format [.pdf] or Joint Photographic Experts Group [.jpg or .jpeg]) and provided that this form produces a substantially similar representation of the electronic data when viewed using the proper hardware and software, please produce electronic data in image storing files.

8.4.    If the electronic data, through reasonable efforts, cannot be produced in an image storing format, as described above, provide the following:

8.4.1.    A description of the nature of the electronic data, including a general and brief description of type contents in the electronic data responsive to the request.

8.4.2.    A description of the location of this data, and or the identity (including name, address and phone number) of the person and/or entity that has possession or the ability to access such magnetic or electronic data.

8.4.3.    A description of format of the electronic or magnetic data, including the medium on which it is stored, the file type(s), the application typically used to read/write it, and file name(s) and/or file naming convention.

8.4.4.    A detailed cost estimate to produce the information in response to the discovery requests.

9.   Identifying an Item.  When identifying or describing an item or document, please state the following:

9.1.   The nature of the item (e.g., letter, handwritten note).

9.2.   The title or heading that appears on the item (if any).

9.3.   The date of the item and the date of each addendum, supplement, or other addition or change.

9.4.   The identity of the author and the signer of the item (if applicable), and of the person on whose behalf or at whose request or direction the item was prepared or delivered.

10. Identifying a Person. When identifying or describing a person, please state the following:

10.1.   The person's full name.

10.2.   The person's present or last known address and telephone number.

10.3.   In the case of an individual, the person's present occupation, job title, employer, and employer's address.

10.4.   In the case of any entity or organization, the officer, employee, or agent most closely connected with the subject matter of the request, as well as the officer who is responsible for supervising that officer or employee.

## DEFINITIONS

The following definitions and instructions shall apply to these Interrogatories and Requests for Production:

1.     "You", "your", and "defendant" shall mean the individual Defendant answering the interrogatories and requests for production and that are addressed to in this case, and shall include past or present directors, officers, representatives, employees, agents, guardians, attorneys, or any other person or persons acting or purporting to act on your behalf, whether authorized to do so or not.  If the interrogatories and requests for production are addressed to multiple Defendants, "You", "your", and "defendant" shall mean the individual Defendant answering the responses, and shall include past or present directors, officers, representatives, employees, agents, guardians, attorneys, or any other person or persons acting or purporting to act on your behalf, whether authorized to do so or not

2.     "Any" includes the word "all" and "all" includes the word "any".

3.     The term "person" or "persons" shall mean all individuals and entities, including, but not limited to, natural persons, firms, partnerships, associations, organizations, divisions, joint ventures, corporations, trusts, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, agent, governmental entities, domestic or foreign, unincorporated associations, or any other form of business, governmental, public or charitable entity.

4.    : Unless otherwise established by the context, the plural shall be construed to include the singular and the singular the plural, wherever the effect of doing so is to increase the information in your responses.

5.    The terms "relate to", "relating to", "refer to", and "referring to" shall be construed to include any connection, direct or indirect, whatsoever with the requested documentation, person, or subject matter, without limitation unless specifically indicated.

6.    "Identify" or give the "identity of" means:

i.    In the case of a person, to state such person's
(1)    full name;
(2)    last known home and business address and home and business telephone number;
(3)    employer or business affiliation; and
(4)    occupation and business position held.

ii.    In the case of a document, to state:
(1)    the identity of the person or persons preparing it and the sender;
(2)    its title or a description of the general nature of the subject matter;
(3)    the identity of the addressee(s), if any;
(4)    its date or dates of preparation;
(5)    its date or dates and manner of distribution and publication, if any;
            (6)    the location of each copy and the identity of its present custodian;
            (7)    the type of document; and
            (8)    all characteristics by which that document might be distinguished from any other document.

iii.    In the case of a communication in the form of an oral statement, to state:
(1)    the identity of the person uttering the oral statement;
(2)    the place at which such oral statement was uttered;
(3)    the date on which such oral statement was uttered;
(4)    the identity of each person in whose presence or hearing such oral statement was uttered; and
(5)    the substances of the oral statement.

7.    "Evidencing" or "evidences" shall mean constituting, proving, reflecting, indicating, or probative of the existence or nature of any fact, allegation, or given matter.

8.    "Fact" refers to all evidentiary facts presently known to you and all evidentiary facts the existence of which is presently inferred by you from the existence of any combination of evidentiary and/or ultimate facts.

9.    "Policy" refers to the policy of insurance in effect on the date that the loss made the basis of this lawsuit occurred.

10.    "Property" or "property" refers to the building, dwelling, other structures, and personal

property covered by the Policy, as defined above, made the basis of this lawsuit.

11. "Lawsuit" or "lawsuit" shall mean the litigation, the style, court and cause number which is found in the caption to this instrument.

12. "Document" or "document" shall include but not be limited to all handwritten, stenographic, typed, written, or printed writings and papers of every kind, kept, maintained, or received by Plaintiff or your attorney, including, but not limited to, contracts, invoices, letters, telegrams, e-mails, memoranda, reports, studies, books, records, calendar or diary entries, pamphlets, notes, charts, tabulations, records (including tape recordings or transcriptions thereof) of meetings, conferences, and telephone or other conversations or communications, ledgers, financial statements, photostats, microfilm, photographs, slides, motion pictures, video tapes, tape and disc recordings on software programs, including reproduction of copies of documents which are not identical duplicates of the original, and also including any reproduction or copies of documents of which the originals are not in the possession, custody or control of Defendant. This definition includes all copies, reproductions, or facsimiles of documents by whatever means made and all documents for which privilege is claimed. If copies of a document are not identical by reason of handwritten notations, identification marks, or any other modifications, each such non-identical copy is a separate document within the meaning of this definition.

11. "Incident", "accident", and/or "occurrence", and/or "collision" shall mean and refer to that certain incident which is described in more detail in Plaintiff' Original Petition currently on file herein.

12. "Claim" or "claim" means the claim for insurance benefits submitted by Plaintiff and at issue in this lawsuit, or in a prior claim, as the context may dictate.

13. "Handle or "Handled" means investigating, adjusting, supervising, estimating, managing, settling, approving, supplying information or otherwise performing a task or work with respect to the claim(s) at issue in this lawsuit.

14. "Communication" or "communication" shall mean and refer to the transmission or exchange of information, either orally or in writing, and includes without limitation any conversation, letter, handwritten notes, memorandum, inter or intraoffice correspondence, electronic mail, text messages, or any other electronic transmission, telephone call, telegraph, telex telecopy. Facsimile, cable, conference, tape recording, video recording, digital recording, discussion, or face-to-face communication.

15. "Claim File" or "claim file" means the claim files and "field file(s)," whether kept in paper or electronic format, including but not limited to all documents, file jackets, file notes, claims diary or journal entries, log notes, handwritten notes, records of oral communications, communications, correspondence, photographs, diagrams, estimates, reports, recommendations, invoices, memoranda and drafts of documents regarding the Claim.

## **NOTICE OF AUTHENTICATION**

You are advised that pursuant to Tex. R. Civ. P. 193.7, Plaintiff intends to use all documents exchanged and produced between parties, including but not limited to correspondence and discovery responses during the trial of the above-entitled and numbered cause.

## INTERROGATORIES TO CATLIN SPECIALTY INSURANCE COMPANY

1. Identify all persons answering or supplying any information in answering these interrogatories.

**ANSWER**

2. Identify all persons and entities who were involved in evaluating Plaintiff's claim and provide the following information for each person you identify:
   a. their name and job title(s)as of the Date of Loss;
   b. their employment; and
   c. description of their involvement with Plaintiff's claim.

**ANSWER**

3. Identify the name and job title of each person who inspected the Property made the basis of this Lawsuit and the date of the inspection.

**ANSWER**

4. Identify the persons or entities responsible for underwriting of Plaintiff's policy.

**ANSWER**

5. State the date Defendant closed Plaintiff's claim and to the extent Defendant asserts statute of limitations as a defense, state all dates and manners in which Defendant notified Plaintiff(s)

**ANSWER**

6. Does Defendant contend that Plaintiff(s) failed to provide proper notice of the claim made the basis of this Lawsuit under the Policy or Texas Insurance Code, and, if so, describe how notice was deficient and the resulting prejudice, if any.

**ANSWER**

7. At the time the claim made the basis of this Lawsuit was investigated and inspected, describe all damage attributable to the storm observed at the Property by Defendant, or persons or entities on behalf of Defendant.

**ANSWER**

8. Please identify all documents and information requested from Plaintiff at the time the claim made the basis of this Lawsuit was investigated, stating the date and manner in which the request was made, and identify the requested documents Defendant claims Plaintiff failed

to provide upon Defendants' request.

**ANSWER**

9. If you contend Plaintiff's damages claimed in this lawsuit are from a prior insurance claim or prior unrepaired damage, please list all prior claims on the Property made in the last ten years, including claim number, date of loss, type of loss, and payments, if any.

**ANSWER**

10. Describe Defendants' method of determining whether overhead and profit ("O&P") should be applied to the claim made the basis of this Lawsuit, and whether Defendant has a policy or procedure in place regarding the method of determining O&P.

**ANSWER**

11. List all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion identified, state the factual basis that Defendant relies upon to apply that exclusion.

**ANSWER**

12. Identify all items on the claim made the basis of this Lawsuit that Defendant applied depreciation, stating for each item the method for calculating the depreciation and the age of the item.

**ANSWER**

13. State whether Defendant applied depreciation to labor and removal of the roof in the claim made the basis of this lawsuit, identifying the basis for that depreciation and the applicable policy section.

**ANSWER**

14. State whether sales tax was paid by Defendant on all materials and/or labor and the method of calculation.

**ANSWER**

15. State the Date Defendant first anticipated litigation.

**ANSWER**

16. Identify all underwriting reports in Defendants' possession or control for the Property.

**ANSWER**

17. Identify the amount of attorneys' fees incurred by Defendant to date and in connection with this amount state:
    a. The activities and work performed from the inception of the representation of Defendant through Present.
    b. The amount of time spent on each of the activities performed from the inception of the representation through Present.
    c. The name and hourly rate charged by each of the attorneys representing Defendant in this case from the inception of the representation until Present; and the date in which the representation of Plaintiff began by each attorney.

**ANSWER**

18. What is your compensation arrangement with your expert witness in this case?

**ANSWER**

19. Describe the work performed by your expert witnesses in this case, including a description of the work, the time the work took to complete, the name of the person who completed the work, the date of the work and the rate charged or applied to the work.

**ANSWER**

20. State every basis, in fact and based on the terms of the policy, for Defendants' denial or partial denial and/or recommendation of denial or partial denial of Plaintiff's claim(s)

**ANSWER**

21. If you contend that the Policy is void for any reason, state the factual basis for that contention.

**ANSWER**

## REQUEST FOR PRODUCTION TO CATLIN SPECIALTY INSURANCE COMPANY

1.      Produce a certified copy of all Policies you issued to Plaintiff for the Property that were in effect in 2016, 2017, and 2018.

RESPONSE:

2.      Produce email correspondence You sent and received from Engle Martin regarding the Claim(s).

RESPONSE:

3.      Produce underwriting files and documents relating to the underwriting for all insurance policies for the Property identified in the Petition. This request is limited to the past 4 years. To the extent Defendant contends that the underwriting file or documents older than 4 years impact the damages or coverage, produce that underwriting file or document.

RESPONSE:

4.      Produce the complete Claim File including all documents and communications regarding the Claim.

RESPONSE:

5.      Produce the Claim Files regarding the Claim(s) of any third-party you hired and/or retained to investigate, consult, handle and/or adjust the Claim(s).

RESPONSE:

6.      If you contend that any prior claims Plaintiff submitted for damages to the Property affected your decision in relation to the Claim(s) at issue, produce the complete Claim File regarding those prior claim(s).

RESPONSE:

7.      All documents relating to the condition or damages of the Property or any insurance claim on the Property identified in the Petition.

RESPONSE:

8.      The adjusting reports, estimates, engineering, mold, glazing windows, HVAC, and other reports prepared concerning Plaintiff's underlying claim(s), including drafts thereof.

RESPONSE:

9.      All documents relating to any real property insurance claims made by Plaintiff at the insured premises that are the basis of this Lawsuit or business interruption, loss of income and/or business loss claims made by the Plaintiff(s). This request is limited to the past 3 years. To the

extent Defendant contends that documents older than 3 years impact the damages or coverage, produce that document.

RESPONSE:

10.    All requests for information to any third party about the Property, the Plaintiff(s), or the claims made the basis of this Lawsuit.

RESPONSE:

11.    All documents used to instruct, advise, guide, inform, educate, or assist provided to any person handling the claim made the basis of this Lawsuit that related to the adjustment of this type of claim, i.e., hail property damage, business interruption, loss of income and/or business loss.

RESPONSE:

12.    All documents obtained from any person(s) or entity(ies) and governmental agencies on behalf of Defendant or by Defendant relating to the Plaintiff(s), the Property, the Policy, or the claims made the basis of this Lawsuit. This request includes all documents obtained by way of deposition on written questions.

RESPONSE:

13.    All documents received (prior to litigation) directly or indirectly from Plaintiff(s) or created by Plaintiff(s) related to the Property made the basis of this Lawsuit. This request is limited to the past 5 years. To the extent Defendant contends that any document older than 5 years impact the damages or coverage, produce that document.

RESPONSE:

14.    Produce a copy of all price lists used to prepare any estimates for the claim made the basis of this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party, You can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

RESPONSE:

15.    To the extent Defendant created or altered any prices used in the preparation of an estimate in the claim(s) made the basis of this Lawsuit, produce all documents related to the creation or alteration of the price, including the original price for that item and the factual bases for the creation or alteration.

RESPONSE:

16.    A complete copy of the personnel file related to performance (excluding medical and retirement information) for all people and their managers and/or supervisors who directly handled the claim made the basis of this Lawsuit, including all documents relating to applications for employment, former and current resumes, last known address, job title, job descriptions, reviews,

evaluations, and all drafts or versions of requested documents. This request is limited to the past 5 years.

RESPONSE:

17.    All organizational charts, diagrams, lists, and/or documents reflecting each department. Division or section of Defendants' company to which the claim made the basis of this Lawsuit was assigned.

RESPONSE:

18.    All Texas insurance licenses and/or certifications in effect that the time of the claims arising out of the storm made the basis of Plaintiff's claim for all persons who worked on the claim made the basis of this Lawsuit, including any document relating to the application, issuance or review of those licenses and/or certifications.

RESPONSE:

19.    If an engineer and/or engineering firm evaluated the Property, produce all reports written at the request of Defendant by that engineer or engineering firm within the last 3 years. This request is limited to the extent that the engineer and/or engineering firm was used during claims handling.

RESPONSE:

20.    Produce all documents showing amounts billed and paid to any engineer and/or engineering firm identified in response to Request for Production No. 19 above within the last 3 years. A summary is acceptable in lieu of actual invoices or payments.

RESPONSE:

21.    All documents reflecting the pre-anticipation of litigation reserve(s) set on the claim made the basis of this Lawsuit, including any changes to the reserve(s) along with any supporting documentation.

RESPONSE:

22.    All documents relating to issues of honesty, criminal actions. past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior which resulted in disciplinary action by Defendant of any person(s) or entity(ies) who handled the claim made the basis of this Lawsuit, the Plaintiff(s) or any person assisting on the claim made the basis of this Lawsuit.

RESPONSE:

23.    All documents relating to work performance, claims patterns, claims problems, commendations, claims trends, claims recognitions, and/or concerns for any person who handled the claim made the basis of this Lawsuit.

RESPONSE:

24.    All XactAnalysis reports that include this claim in any way, this Policy, the amount paid on this Policy, and/or referencing any person who handled the claim(s) made the basis of this Lawsuit.

RESPONSE:

25.    Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 24 above.

RESPONSE:

26.    All Simsol Management reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit.

RESPONSE:

27.    Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 26 above.

RESPONSE:

28.    For any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert, all documents or tangible things that have been provided to, reviewed by, or prepared for any testifying expert.

RESPONSE:

29.    Pursuant to Texas Rule of Evidence 609(1), provide all documents evidencing conviction of a crime which You intend to use as evidence to impeach any party or witness.

RESPONSE:

30.    All indemnity agreements in effect at the time of Plaintiff's claim between Defendant and any person(s) and/or entity(ies) who handled the claim(s) made the basis of the Lawsuit.

RESPONSE:

31.    All contracts in effect at the time of Plaintiff's claim(s) between Defendant and any person(s) or entity(ies) who handled the claim(s) made the basis of the Lawsuit.

RESPONSE:

32.    All confidentiality agreements and/or instructions regarding confidentiality in effect at the time of Plaintiff's claim between Defendant and any person(s) and/or entity(ies) who the claim(s) made the basis of the Lawsuit.

RESPONSE:

33.     All documents between Defendant and any person(s) and/or entity(ies) who handled the claim(s) made the basis of the Lawsuit regarding document retention policy in effect at the time of Plaintiff's claim(s):

RESPONSE:

34.     To the extent the claim involves rescinding of the policy, all documents regarding Defendants' standards for investigating and rescinding and/or voiding a policy.

RESPONSE:

35.     If a claim for business interruption, loss or income and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating any extra expenses incurred during the period of business interruption loss of income and/or business loss covered under Plaintiff's policy. This request is limited to the last 3 years.

RESPONSE:

36.     If a claim for business interruption, loss of income and/or business loss is asserted, all documents prepared by any third party used to evaluate Plaintiff's claim(s) regarding, in any way, the investigation of business interruption, loss of income and/or business loss claims.

RESPONSE:

37.     All claims handling manuals and/or guidelines that were in effect during your investigation of Plaintiff's claim(s). This request is limited to manuals or guidelines related to wind/hail claims, First Party claims, and/or structural business claims.

RESPONSE:

38.     All communications between You and Engle Martin & Associates, Caliber Forensics, and McClelland and their employees pertaining the Claim(s).

RESPONSE:

39.     All contracts between You and Engle& Martin pertaining to the Insured Location.

RESPONSE:

40.     Documents, including cancelled checks, wire transfer receipts, or other source documents, if you contend that you exhausted your policy limits under the Policy.

RESPONSE:

41.     The electronic diary, including the electronic and paper notes made by Defendants' claims personnel, contractors, and third-party adjusters/adjusting firms relating to Plaintiff's claim(s).

RESPONSE:

42.     Your written procedures or policies (including Documents(s) maintained in electronic form) that pertain to the handling of, wind and hail claims in Texas.  This request is limited to policies and procedures in effect during the date of loss to present.

RESPONSE:

43.     Your written procedures or policies (including Documents(s) maintained in electronic form) that pertain to the handling of, wind and hail claims in Texas.  This request is limited to policies and procedures in effect during the date of loss to present.

RESPONSE:

44.     The Operation Guides which relate to the handling of wind and hail claims in Texas in effect from January 1, 2017 to the present.

RESPONSE:

45.     The Claims Manuals which relate to the handling of wind and hail claims in Texas in effect from January 1, 2017 to the present.  Produce the requested documents for both the independent adjusting company and the party [carrier] that hired the adjusting company.

RESPONSE:

46.     The emails, instant message, and internal correspondence pertaining to Plaintiff's underlying claim(s).

RESPONSE:

47.     Videotapes, photographs and recordings of the Property.

RESPONSE:

48.     All photo sheets and photo logs of the Property since January 1, 2016

RESPONSE:

49.     The billing statements, including billing detail, of the independent adjusters and adjusting companies retained to evaluate the subject property.

RESPONSE:

50.     Your internal newsletters, bulletins, publications and memoranda relating to policies and procedures for handling Texas wind and hail claims that were issued from January 1, 2017 to the present including, but not limited to, memoranda issued to claims adjusters.

RESPONSE:

51.     The information regarding the wind and hail conditions on which you relied in making decisions on the Plaintiff's claim(s).

RESPONSE:

52.     Documents, manuals, and training materials, including photographs, audio and/or video tapes used in training, overseeing, or supervising your personnel employed in adjusting property claims in Texas and in effect January 1, 2017 to the present.

RESPONSE:

53.     The managerial bonus or incentive plan for managers responsible for wind and hail claims in effect for the time period January 1, 2017 to the present.

RESPONSE:

54.     The bonus or incentive plan for adjusters responsible for wind and hail claims in effect for the time period January 1, 2017 to the present.

RESPONSE:

55.     Documents reflecting your criteria and procedures for the selection and retention of independent adjusters and engineers handling, wind and hail claims in Texas from January 1, 2017 to the present.

RESPONSE:

56.     If a third-party engineer evaluated the subject property, provide the Documents that show the number of other matters in which the same engineers were retained by you to evaluate other property wind and hail claims over the past 3 years.

RESPONSE:

57.     If a third-party engineer evaluated the subject property, provide the engineering reports in which the same engineers were retained by you to evaluate other property wind and hail claims over the past 3 years.

RESPONSE:

58.     The complaint log required to be kept by you for, windstorm and hail complaints in Texas filed over the past three years.

RESPONSE:

59.     Your approved or preferred vendor list for engineers, third party adjusters/adjusting companies, roofers and contractors, used to evaluate wind and hail claims in Texas from January 1, 2017 to the present.

RESPONSE:

60.     The contract between you and the third-party adjusting company during the adjustment of the claim made the basis of this lawsuit.

RESPONSE:

61.     The correspondence between you and the third-party adjusters/adjusting firms, engineers and other estimators that pertain to the Claim(s) at issue.

RESPONSE:

62.     Your log notes and the third-party adjusters/adjusting firms' log notes that pertain to the Claim(s).

RESPONSE:

63.     Please produce all email correspondence you sent to and received from Engle Martin and McClelland and Hine, and their employees that pertain to the Claim(s).

RESPONSE:

64.     Please produce all photo sheets and drafts of photo sheets for this Claim(s) including the third-party adjusters/adjusting firms' photo sheets and drafts of photo sheets.

RESPONSE:

65.     Please produce all of your written standards for the investigation of property damage claims for the past 5 years.

RESPONSE:

66.     Please produce a privilege log for all documents redacted or withheld from production due to assertion of a privilege.

RESPONSE:

67.     Please produce your diary and/or log notes for the Claim(s).

RESPONSE:

68.     The file from the office of Plaintiff's insurance agent concerning Plaintiff's property.

RESPONSE:

69.     Please produce all documents substantiating amounts You have paid your attorney for representing You in this lawsuit.

RESPONSE:

70.     Please produce all documents substantiating amounts You have paid your attorney for

representing You during the Claim(s) pre-suit.

RESPONSE:

71.    Please produce copies of your engagement letter/fee agreement between you (or whatever entity or person is paying your attorney's fee bills and your attorneys in this matter.

RESPONSE:

72.    Produce all written correspondence and/or electronic communications you sent to, or received from, Plaintiff's insurance agent pertaining to the Claim(s), the Property, and the Plaintiff.

RESPONSE:

73. ..  Produce copies of all documents you intend to offer as evidence at the trial of this matter.

RESPONSE:

74.    If this claim involves reinsurance, produce copies of the policy or agreement pertaining to that reinsurance.

RESPONSE:

75. ·   If an attorney was involved in evaluating payment or coverage of Plaintiff's Claim(s) pre-suit, provide all documents relating to that evaluation or recommendation.

RESPONSE:·

76.    Building Codes you referenced and/or utilized during the Claim(s).

RESPONSE:

77.    All correspondence, including email correspondence, to and from Steve Henning pertaining to the Claim(s) prior to Plaintiff's Rule 542A Notice letter

RESPONSE:

78.    The billing statements, including billing detail and descriptions, of the engineering companies and its employees retained to evaluate the subject property.

RESPONSE:

79.    Produce email correspondence You sent and received from McClelland and Hine regarding the Claim(s).

RESPONSE:

80.    Produce email correspondence You sent and received from Caliber Forensics regarding the Claim(s).

RESPONSE:

81.    Produce email correspondence You sent and received from Jason Hodge regarding the Claim(s).

RESPONSE:

80.    Produce email correspondence Isaac Franks sent and received regarding the Claim(s).

RESPONSE:

## INTERROGATORIES TO MCCLELLAND AND HINE, INC.

1. Identify all persons answering or supplying any information in answering these interrogatories.

**ANSWER**

2. Identify all persons and entities who were involved in evaluating Plaintiff's claim and provide the following information for each person you identify:
   a. their name and job title(s)as of the Date of Loss;
   b. their employment; and
   c. description of their involvement with Plaintiff's claim.

**ANSWER**

3. Identify the name and job title of each person who inspected the Property made the basis of this Lawsuit and the date of the inspection.

**ANSWER**

4. Identify the persons or entities responsible for underwriting of Plaintiff's policy.

**ANSWER**

5. State the date Defendants closed Plaintiff's claim and to the extent Defendants asserts statute of limitations as a defense, state all dates and manners in which Defendants notified Plaintiff(s)

**ANSWER**

6. Does Defendant contend that Plaintiff(s) failed to provide proper notice of the claim made the basis of this Lawsuit under the Policy or Texas Insurance Code, and, if so, describe how notice was deficient and the resulting prejudice, if any.

**ANSWER**

7. At the time the claim made the basis of this Lawsuit was investigated and inspected, describe all damage attributable to the storm observed at the Property by Defendant, or persons or entities on behalf of Defendant.

**ANSWER**

8. Please identify all documents and information requested from Plaintiff at the time the claim made the basis of this Lawsuit was investigated, stating the date and manner in which the request was made, and identify the requested documents Defendant claims Plaintiff failed

to provide upon Defendants' request.

**ANSWER**

9. If you contend Plaintiff' damages claimed in this lawsuit are from a prior insurance claim or prior unrepaired damage, please list all prior claims on the Property made in the last ten years, including claim number, date of loss, type of loss, and payments, if any.

**ANSWER**

10. Describe Defendants' method of determining whether overhead and profit ("O&P") should be applied to the claim made the basis of this Lawsuit, and whether Defendant has a policy or procedure in place regarding the method of determining O&P.

**ANSWER**

11. List all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion identified, state the factual basis that Defendant relies upon to apply that exclusion.

**ANSWER**

12. Identify all items on the claim made the basis of this Lawsuit that Defendant applied depreciation, stating for each item the method for calculating the depreciation and the age of the item.

**ANSWER**

13. State whether Defendant applied depreciation to labor and removal of the roof in the claim made the basis of this lawsuit, identifying the basis for that depreciation and the applicable policy section.

**ANSWER**

14. State whether sales tax was paid by Defendant on all materials and/or labor and the method of calculation.

**ANSWER**

15. State the Date Defendant first anticipated litigation.

**ANSWER**

16. Identify all underwriting reports in Defendants' possession or control for the Property.

**ANSWER**

17. Identify the amount of attorneys' fees incurred by Defendant to date and in connection with this amount state:
    d.  The activities and work performed from the inception of the representation of Defendant through Present.
    e.  The amount of time spent on each of the activities performed from the inception of the representation through Present.
    f.  The name and hourly rate charged by each of the attorneys representing Defendant in this case from the inception of the representation until Present; and the date in which the representation of Plaintiff began by each attorney.

**ANSWER**

18. What is your compensation arrangement with your expert witness in this case?

**ANSWER**

19. Describe the work performed by your expert witnesses in this case, including a description of the work, the time the work took to complete, the name of the person who completed the work, the date of the work and the rate charged or applied to the work.

**ANSWER**

20. State every basis, in fact and based on the terms of the policy, for Defendants' denial or partial denial and/or recommendation of denial or partial denial of Plaintiff's claim(s)

**ANSWER**

21. If you contend that the Policy is void for any reason, state the factual basis for that contention.

**ANSWER**

## REQUEST FOR PRODUCTION TO MCCLELLAND AND HINE, INC.

1.     Produce a certified copy of all Policies you issued to Plaintiff for the Property that were in effect in 2016, 2017, and 2018.

RESPONSE:

2.     Produce email correspondence You sent and received from Engle Martin regarding the Claim(s).

RESPONSE:

3.     Produce underwriting files and documents relating to the underwriting for all insurance policies for the Property identified in the Petition. This request is limited to the past 4 years. To the extent Defendant contends that the underwriting file or documents older than 4 years impact the damages or coverage, produce that underwriting file or document.

RESPONSE:

4.     Produce the complete Claim File including all documents and communications regarding the Claim.

RESPONSE:

5.     Produce the Claim Files regarding the Claim(s) of any third-party you hired and/or retained to investigate, consult, handle and/or adjust the Claim(s).

RESPONSE:

6.     If you contend that any prior claims Plaintiff submitted for damages to the Property affected your decision in relation to the Claim(s) at issue, produce the complete Claim File regarding those prior claim(s).

RESPONSE:

7.     All documents relating to the condition or damages of the Property or any insurance claim on the Property identified in the Petition.

RESPONSE:

8.     The adjusting reports, estimates, engineering, mold, glazing windows, HVAC, and other reports prepared concerning Plaintiff's underlying claim(s), including drafts thereof.

RESPONSE:

9.     All documents relating to any real property insurance claims made by Plaintiff at the insured premises that are the basis of this Lawsuit or business interruption, loss of income and/or business loss claims made by the Plaintiff(s). This request is limited to the past 3 years. To the

extent Defendant contends that documents older than 3 years impact the damages or coverage, produce that document.

RESPONSE:

10. All requests for information to any third party about the Property, the Plaintiff(s), or the claims made the basis of this Lawsuit.

RESPONSE:

11. All documents used to instruct, advise, guide, inform, educate, or assist provided to any person handling the claim made the basis of this Lawsuit that related to the adjustment of this type of claim, i.e., hail property damage, business interruption, loss of income and/or business loss.

RESPONSE:

12. All documents obtained from any person(s) or entity(ies) and governmental agencies on behalf of Defendant or by Defendant relating to the Plaintiff(s), the Property, the Policy, or the claims made the basis of this Lawsuit. This request includes all documents obtained by way of deposition on written questions.

RESPONSE:

13. All documents received (prior to litigation) directly or indirectly from Plaintiff(s) or created by Plaintiff(s) related to the Property made the basis of this Lawsuit. This request is limited to the past 5 years. To the extent Defendant contends that any document older than 5 years impact the damages or coverage, produce that document.

RESPONSE:

14. Produce a copy of all price lists used to prepare any estimates for the claim made the basis of this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party, You can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

RESPONSE:

15. To the extent Defendant created or altered any prices used in the preparation of an estimate in the claim(s) made the basis of this Lawsuit, produce all documents related to the creation or alteration of the price, including the original price for that item and the factual bases for the creation or alteration.

RESPONSE:

16. A complete copy of the personnel file related to performance (excluding medical and retirement information) for all people and their managers and/or supervisors who directly handled the claim made the basis of this Lawsuit, including all documents relating to applications for employment, former and current resumes, last known address, job title, job descriptions, reviews,

evaluations, and all drafts or versions of requested documents. This request is limited to the past 5 years.

RESPONSE:

17.   All organizational charts, diagrams, lists, and/or documents reflecting each department. Division or section of Defendants' company to which the claim made the basis of this Lawsuit was assigned.

RESPONSE:

18.   All Texas insurance licenses and/or certifications in effect that the time of the claims arising out of the storm made the basis of Plaintiff's claim for all persons who worked on the claim made the basis of this Lawsuit, including any document relating to the application, issuance or review of those licenses and/or certifications.

RESPONSE:

19.   If an engineer and/or engineering firm evaluated the Property, produce all reports written at the request of Defendant by that engineer or engineering firm within the last 3 years. This request is limited to the extent that the engineer and/or engineering firm was used during claims handling.

RESPONSE:

20.   Produce all documents showing amounts billed and paid to any engineer and/or engineering firm identified in response to Request for Production No. 19 above within the last 3 years. A summary is acceptable in lieu of actual invoices or payments.

RESPONSE:

21.   All documents reflecting the pre-anticipation of litigation reserve(s) set on the claim made the basis of this Lawsuit, including any changes to the reserve(s) along with any supporting documentation.

RESPONSE:

22.   All documents relating to issues of honesty, criminal actions, past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior which resulted in disciplinary action by Defendant of any person(s) or entity(ies) who handled the claim made the basis of this Lawsuit, the Plaintiff(s) or any person assisting on the claim made the basis of this Lawsuit.

RESPONSE:

23.   All documents relating to work performance, claims patterns, claims problems, commendations, claims trends, claims recognitions, and/or concerns for any person who handled the claim made the basis of this Lawsuit.

RESPONSE:

24. All XactAnalysis reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim(s) made the basis of this Lawsuit.

RESPONSE:

25. Any email or document that transmits, discusses; or analyzes any report produced in response to Request for Production No. 24 above.

RESPONSE:

26. All Simsol Management reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit.

RESPONSE:

27. Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 26 above.

RESPONSE:

28. For any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert, all documents or tangible things that have been provided to, reviewed by, or prepared for any testifying expert.

RESPONSE:

29. Pursuant to Texas Rule of Evidence 609(1), provide all documents evidencing conviction of a crime which You intend to use as evidence to impeach any party or witness.

RESPONSE:

30. All indemnity agreements in effect at the time of Plaintiff's claim between Defendant and any person(s) and/or entity(ies) who handled the claim(s) made the basis of the Lawsuit.

RESPONSE:

31. All contracts in effect at the time of Plaintiff's claim(s) between Defendant and any person(s) and/or entity(ies) who handled the claim(s) made the basis of the Lawsuit.

RESPONSE:

32. All confidentiality agreements and/or instructions regarding confidentiality in effect at the time of Plaintiff's claim between Defendant and any person(s) and/or entity(ies) who the claim(s) made the basis of the Lawsuit.

RESPONSE:

33.    All documents between Defendant and any person(s) and/or entity(ies) who handled the claim(s) made the basis of the Lawsuit regarding document retention policy in effect at the time of Plaintiff's claim(s).

RESPONSE:

34.    To the extent the claim involves rescinding of the policy, all documents regarding Defendants' standards for investigating and rescinding and/or voiding a policy.

RESPONSE:

35:    If a claim for business interruption, loss or income, and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating any extra expenses incurred during the period of business interruption loss of income and/or business loss covered under Plaintiff's policy. This request is limited to the last 3 years.

RESPONSE:

36.    If a claim for business interruption, loss of income and/or business loss is asserted, all documents prepared by any third party used to evaluate Plaintiff's claim(s) regarding, in any way, the investigation of business interruption, loss of income and/or business loss claims.

RESPONSE:

37.    All claims handling manuals and/or guidelines that were in effect during your investigation of Plaintiff's claim(s).  This request is limited to manuals or guidelines related to wind/hail claims, First Party claims, and/or structural business claims.

RESPONSE:

38.    All communications between You and Engle Martin & Associates, Caliber Forensics, and Catlin Specialty Insurance Company and their representatives pertaining the Claim(s).

RESPONSE:

39.    All contracts between You and Engle& Martin pertaining to the Insured Location.

RESPONSE:

40.    Documents, including cancelled checks, wire transfer receipts, or other source documents, if you contend that you exhausted your policy limits under the Policy.

RESPONSE:

41.    The electronic diary, including the electronic and paper notes made by Defendants' claims personnel, contractors, and third-party adjusters/adjusting firms relating to Plaintiff's claim(s).

RESPONSE:

42.     Your written procedures or policies (including Documents(s) maintained in electronic form) that pertain to the handling of, wind and hail claims in Texas.  This request is limited to policies and procedures in effect during the date of loss to present.

RESPONSE:

43.     Your written procedures or policies (including Documents(s) maintained in electronic form) that pertain to the handling of, wind and hail claims in Texas.  This request is limited to policies and procedures in effect during the date of loss to present.

RESPONSE:

44.     The Operation Guides which relate to the handling of wind and hail claims in Texas in effect from January 1, 2017 to the present.

RESPONSE:

45.     The Claims Manuals which relate to the handling of wind and hail claims in Texas in effect from January 1, 2017 to the present.  Produce the requested documents for both the independent adjusting company and the party [carrier] that hired the adjusting company.

RESPONSE:

46.     The emails, instant message, and internal correspondence pertaining to Plaintiff's underlying claim(s).

RESPONSE:

47.     Videotapes, photographs and recordings of the Property.

RESPONSE:

48.     All photo sheets and photo logs of the Property since January 1, 2016

RESPONSE:

49.     The billing statements, including billing detail, of the independent adjusters and adjusting companies retained to evaluate the subject property.

RESPONSE:

50.     Your internal newsletters, bulletins, publications and memoranda relating to policies and procedures for handling Texas wind and hail claims that were issued from January 1, 2017 to the present including, but not limited to, memoranda issued to claims adjusters.

RESPONSE:

51.     The information regarding the wind and hail conditions on which you relied in making decisions on the Plaintiff's claim(s).

RESPONSE:

52.     Documents, manuals, and training materials, including photographs, audio and/or video tapes used in training, overseeing, or supervising your personnel employed in adjusting property claims in Texas and in effect January 1, 2017 to the present.

RESPONSE:

53.     · The managerial bonus or incentive plan for managers responsible for wind and hail claims in effect for the time period January 1, 2017 to the present.

RESPONSE:

54.     The bonus or incentive plan for adjusters responsible for wind and hail claims in effect for the time period January 1, 2017 to the present.

RESPONSE:

55.     Documents reflecting your criteria and procedures for the selection and retention of independent adjusters and engineers handling, wind and hail claims in Texas from January 1, 2017 to the present.

RESPONSE:

56.     If a third-party engineer evaluated the subject property, provide the Documents that show the number of other matters in which the same engineers were retained by you to evaluate other property wind and hail claims over the past 3 years.

RESPONSE:

57.     If a third-party engineer evaluated the subject property, provide the engineering reports in which the same engineers were retained by you to evaluate other property wind and hail claims over the past 3 years.

RESPONSE:

58.     The complaint log required to be kept by you for, windstorm and hail complaints in Texas filed over the past three years.

RESPONSE:

59.     Your approved or preferred vendor list for engineers, third party adjusters/adjusting companies, roofers and contractors, used to evaluate wind and hail claims in Texas from January 1, 2017 to the present.

RESPONSE:

60.   The contract between you and the third-party adjusting company during the adjustment of the claim made the basis of this lawsuit.

RESPONSE:

61.   The correspondence between you and the third-party adjusters/adjusting firms, engineers and other estimators that pertain to the Claim(s) at issue.

RESPONSE:

62.   Your log notes and the third-party adjusters/adjusting firms' log notes that pertain to the Claim(s).

RESPONSE:

63.   Please produce all email correspondence you sent to and received from Engle Martin and Catlin Specialty Insurance Company, and their employees that pertain to the Claim(s).

RESPONSE:

64.   Please produce all photo sheets and drafts of photo sheets for this Claim(s) including the third-party adjusters/adjusting firms' photo sheets and drafts of photo sheets.

RESPONSE:

65.   Please produce all of your written standards for the investigation of property damage claims for the past 5 years.

RESPONSE:

66.   Please produce a privilege log for all documents redacted or withheld from production due to assertion of a privilege.

RESPONSE:

67.   Please produce your diary and/or log notes for the Claim(s).

RESPONSE:

68.   The file from the office of Plaintiff's insurance agent concerning Plaintiff's property.

RESPONSE:

69.   Please produce all documents substantiating amounts You have paid your attorney for representing You in this lawsuit.

RESPONSE:

70.   Please produce all documents substantiating amounts You have paid your attorney for

representing You during the Claim(s) pre-suit.

RESPONSE:

71.    .Please produce copies of your engagement letter/fee agreement between you (or whatever entity or person is paying your attorney's fee bills and your attorneys in this matter.

RESPONSE:

72.    Produce all written correspondence and/or electronic communications you sent to, or received from, Plaintiff's insurance agent pertaining to the Claim(s), the Property, and the Plaintiff.

RESPONSE:

73.    Produce copies of all documents you intend to offer as evidence at the trial of this matter.

RESPONSE:

74.    If this claim involves reinsurance, produce copies of the policy or agreement pertaining to that reinsurance.

RESPONSE:

75.    If an attorney was involved in evaluating payment or coverage of Plaintiff's Claim(s) pre-suit, provide all documents relating to that evaluation or recommendation.

RESPONSE:

76.    Building Codes you referenced and/or utilized during the Claim(s).

RESPONSE:

77.    All correspondence, including email correspondence, to and from Steve Henning pertaining to the Claim(s) prior to Plaintiff's Rule 542A Notice letter

RESPONSE:

78.    The billing statements, including billing detail and descriptions, of the engineering companies and its employees retained to evaluate the subject property.

RESPONSE:

79. ·  Produce email correspondence You sent and received from Catlin Specialty Insurance Company and their representatives pertaining the Claim(s).

RESPONSE:

80.    Produce email correspondence You sent and received from Caliber Forensics regarding the Claim(s).

RESPONSE:

81.    Produce email correspondence You sent and received from Jason Hodge regarding the Claim(s).

RESPONSE:

80.  ... Produce email correspondence Isaac Franks sent and received regarding the Claim(s).

RESPONSE:

## INTERROGATORIES TO DEFENDANT ENGLE MARTIN & ASSOCIATES, LLC

1.      Identify all email accounts, email addresses, and/or any alias or code used to identify You and used for any communication relating to Your work handling hail and/or windstorm claims arising out of the storm at issue. This request is limited only to the claim(s) that is the subject of this Lawsuit.

RESPONSE:

2.      Identify generally the training or experience your adjuster(s) that handled the Claim(s) had in adjusting hail and/or windstorm damage and any specific training they had for this storm prior to their handling of claim(s) made the basis of this Lawsuit.

RESPONSE:

3.      Identify any degrees, Texas insurance licenses (unless You qualified for adjusting claims in Texas on an emergency basis; then list any insurance licenses You held from other states) or certifications your adjuster(s) that handled the Claim(s) had at the time they handled the claim(s) made the basis of this Lawsuit.

RESPONSE:

4.      Explain how You are compensated and by whom for Your work on claims arising out of the storm at issue in this Lawsuit, stating the amount You were compensated per claim(s), per day, and/or per week and identifying any bonus or incentive plans. To the extent the produced personnel file includes a compensation schedule, You may refer to such personnel file.

RESPONSE:

5.      Identify the following dates:

a.      The date You first obtained an adjuster license in the State of Texas;

b.      The first date You were hired/retained by the insurance company defendant or any other defendant in this Lawsuit to adjust property damage claims;

c.      The date You were first assigned to handle claims arising from the storm at issue in this Lawsuit;

d.      The date You closed Your file on the claim(s) made the basis of this Lawsuit; and

RESPONSE:

6.      Describe in detail each inspection You conducted of the Property made the basis of this Lawsuit, identifying:

a.      The name and job title of any person who inspected the Property for You;

b.      The date of each inspection;

c.      The purpose of each inspection;

d.      The length of time of each inspection;

e.      The equipment or tools used during each inspection;

f.      The areas of the Property inspected (i.e. roof, attic, individual rooms, exterior); and

g.      Any documents generated during or as a result of each inspection, including the persons and/or entities in possession of those documents.

RESPONSE:

7.      Following the inspection(s), did You engage in any additional communications (e.g., telephone, in person. written communication) with Plaintiff? If yes, provide the following information:

a.      the date of such communication(s);

b.      the manner of such communication(s);

c.      the person to whom You communicated;

d.      the reason for the communication(s);

e.      for any telephonic communication(s), identify who initiated the phone call, and the telephone number from which You called or on which You received the call; and

f.      the general substance of the communication.

RESPONSE:

8.      Identify and describe all damage You observed during Your inspection(s) of the claim(s) made the basis of this Lawsuit. To the extent the damage You observed during Your inspection is reflected in scope notes and photographs, You can refer Plaintiff to such scope notes and/or photographs.

RESPONSE:

9.      For all damage observed at the Property or reflected in Your scope notes and/or photographs, state what Your believe to be the cause of the damage, describing the investigatory steps You took to determine the cause, and identify all person(s) and/or entity(ies) that provided information or participated in that determination.

RESPONSE:

10.     To the extent You applied or recommended policy exclusions, identify all exclusions under the Policy applied to the claim(s) made the basis of this Lawsuit, and for each exclusion applied or recommended, state the factual reason(s) that the exclusion was applied or recommended.

RESPONSE:

11.     Identify the information You used to determine and how You calculated the amount of depreciation that You applied to any damage categories included in any estimates You prepared and/or approved on the claim(s) made the basis of this Lawsuit.

RESPONSE:

12.     How did You determine whether You would or would not apply overhead and profit (O&P) to Plaintiff's claim(s)?

RESPONSE:

13.     Identify all documents that You relied upon in the adjustment of the claim(s) made the basis of this Lawsuit. For each document, identify who provided the document.

RESPONSE:

14.     Identify all documents or information You requested from Plaintiff during the investigation of the claim(s) made the basis of this Lawsuit, the date the request was made, the person who communicated the request, and the agent and/or employee of Plaintiff who received the request.

RESPONSE:

15.     Identify all documents or items in Your possession related to the claim(s) made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim(s).

RESPONSE:

16.     To the extent You are aware, identify all documents or items that were altered, revised, changed or removed from the documents or information You provided the insurance company or adjusting company relating to the claim(s) made the basis of this Lawsuit.

RESPONSE:

17.     Identify and describe any training, guidance or instruction provided to You by any person and/or entity regarding the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

## REQUESTS FOR PRODUCTION TO
## DEFENDANT ENGLE MARTIN & ASSOCIATES, LLC

1.   All documents related to Plaintiff, the Property, the Policy, and/or the claim(s) made the basis of this Lawsuit.

RESPONSE:

2.   All licenses or certifications that are identified in response to Interrogatory Number 3.

RESPONSE:

3.   All training documents You have for adjusting hail and/or windstorm claims. This request is limited to the past 4 years.

RESPONSE:

4.   All applications your adjuster(s) that handled the Claim(s) submitted (or submitted on their behalf) for purposes of obtaining a license to adjust claims in the State of Texas that were in effect at the time you investigated Plaintiff's claim(s).

RESPONSE:

5.   All adjuster(s) resumes for the last 5 years that handled the Claim(s).

RESPONSE:

6.   All applications for employment adjuster(s) that handled the Claim(s) submitted for purposes of obtaining employment as an adjuster and/or claims handler in the State of Texas. This request is limited to the 5 years preceding the date of loss at issue in this Lawsuit.

RESPONSE:

7.   All documents You relied upon in the adjustment of the claim(s) made the basis of this Lawsuit.

RESPONSE:

8.   To the extent You made a determination or recommendation regarding depreciation, all documents relating to the application of depreciation on a commercial property claim(s) in the State of Texas for the past 4 years.

RESPONSE:

9.   To the extent You made a determination or recommendation regarding overhead and profit, all documents relating to the application of overhead and profit on a commercial property claim(s) in the State of Texas for the past 4 years.

RESPONSE:

10.    All documents or items in Your possession related to the claim(s) made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to these claim(s).

RESPONSE

11.    All documents meant to instruct, advise, or guide the handling or adjusting hail and/or windstorm claims in the State of Texas for the last 4 years.

RESPONSE:

12.    All of Your training manuals and guidelines in effect at the time of Plaintiff's claim(s) used for software programs utilized in the claim(s) made the basis of this Lawsuit.

RESPONSE:

13.    All documents relating to any performance reviews or evaluations by the carrier of the underlying claim(s), whether formal or informal, regarding Your handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

14.    All documents relating to any Texas Department of Insurance complaints made against You by an insured related to claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

15.    All contracts, indemnity agreements, and/or confidentiality agreements between You and the insurance company in effect during the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

16.    All price lists used by You in handling claims arising out of the storm at issue in this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party, You can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

RESPONSE:

17.    All weather reports regarding wind and/or hail relied upon by You in handling claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

18.    All correspondence to or from the You and/or the insurance company that issued the policy regarding modifying/modifications to the unit price cost and the price list You used in handling Plaintiffs 'claim(s).

RESPONSE:

19.   If a claim for business interruption, loss of income and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating business interruption, loss of income and/or business loss damages covered under Plaintiff's policy. This request is limited to the last 4 years.

RESPONSE:

20.   If a claim for business interruption, loss of income and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating any extra expenses incurred during the period of business interruption, loss of income and/or business loss covered under Plaintiff's policy. This request is limited to the last 4 years.

RESPONSE:

21.   If a claim for business interruption, loss of income and/or business loss is asserted, all documents prepared by any third party used to evaluate Plaintiff's claim(s) in the last 3 years, regarding, in any way, the investigation of business interruption, loss of income and/or business loss claims.

RESPONSE:

22.   Your log notes and claim notes relating to the Claim(s).

RESPONSE:

23.   Your photo sheets and drafts of photo sheets involving the Claim(s).

RESPONSE:

23.   Your interoffice emails and correspondence that involve the Claim(s).

RESPONSE:

24.   Your intraoffice emails and correspondence that involve the Claim(s).

RESPONSE:

25.   Your emails and correspondence to and from any engineer, engineering company employee, and consultant that involve the Claim(s).

RESPONSE:

26.   All Emails and correspondence to and from You relating to the Claim(s).

RESPONSE:

27.   The electronic diary, including the electronic and paper notes made by Your employees relating to the Claim(s).

RESPONSE:

28.     Your written procedures or policies (including Documents(s) maintained in electronic form) that pertain to the handling of, wind and hail claims in Texas. This request is limited to policies and procedures in effect during the date of loss to present.

RESPONSE:

29.     Your written procedures or policies (including Documents(s) maintained in electronic form) that pertain to the handling of, wind and hail claims in Texas. This request is limited to policies and procedures in effect during the date of loss to present.

RESPONSE:

30. ·   Your Operation Guides which relate to the handling of wind and hail claims in Texas in effect from January 1, 2017 to the present.

RESPONSE:

31.·   Videotapes, photographs and recordings of the Property.·

RESPONSE:

32.     Your photo sheets and photo logs of the Property.

RESPONSE:

33.     Your billing statements, including billing detail for handling the Claim(s).

RESPONSE:

34.     Your Claim File for the Claim(s).

RESPONSE:

35.     All emails and correspondence to and from Catlin Specialty Insurance Company employees, McClelland and Hine employees and representatives, and Caliber Forensics representatives relating to the Claim.